IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 14, 2010 Session

## JELANI STINSON v. MARGARET WASHINGTON

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004651-09      John R. McCarroll, Judge**

**No. W2010-00928-COA-R3-JV - Filed November 23, 2010**

This is a child custody dispute between a biological father and the children's maternal grandmother. The trial court awarded custody to the grandmother. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Andrew L. Wener, Memphis, Tennessee, for the appellant, Jelani Stinson.

Haavi Morreim, Cordova, Tennessee, for the appellee, Margaret Washington.

Christina A. Zawisza, Memphis, Tennessee, Guardian ad Litem

### MEMORANDUM OPINION[1]

This dispute involves custody of twin boys born to unmarried parents in 2005. The boys' mother is incarcerated in Texas and is not a party to this appeal. The boys have lived with their maternal grandmother, Respondent Margaret Washington (Ms. Washington) since

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

birth. In December 2006, the boys' paternal grandmother, Jo Alma Stinson (Ms. Stinson) filed a petition in the Juvenile Court for Shelby County asserting that the boys were dependent and neglected and seeking custody. In May 2007, Mr. Stinson filed a petition to intervene in the matter and also sought custody. A guardian ad litem was appointed by the court in February 2007. On October 15, 2008, Ms. Washington also filed a petition alleging the children were dependent and neglected and seeking custody. Following multiple continuances, the juvenile court held a hearing on October 15, 2008, dismissed Ms. Stinson's petition, established a visitation plan for Mr. Stinson, and continued the matter. Mr. Stinson also was ordered to pay child support. In September 2009, the guardian ad litem moved the court to order the parties to participate in a child and family team conference. Mr. Stinson filed a reply to the motion, asserting a conference was unnecessary in this case, that the two placement alternatives included himself and Ms. Washington, and that he was entitled to custody absent a showing of substantial harm to the children.

The juvenile court heard the matter on September 18, 2009. Mr. Stinson did not appear at the hearing, but was represented by legal counsel. The juvenile court found the children were dependent and neglected, dismissed Mr. Stinson's petition, and awarded custody to Ms. Washington. The court granted Mr. Stinson supervised visitation. Mr. Stinson filed a notice of appeal to circuit court on the same day.

Mr. Stinson filed an amended petition in the circuit court on January 6, 2010. In his amended petition, Mr. Stinson reiterated that the children were dependent and neglected where their mother was incarcerated and asserted that, absent a showing of substantial harm to the children, he was entitled to custody as their biological father. Ms. Washington filed an amended petition on January 26, 2010. She prayed for custody to remain with her and asserted that Mr. Stinson had failed to appear at the hearing in juvenile court, that the juvenile court made a finding of abandonment, that Mr. Stinson had failed to pay child support as ordered, that Mr. Stinson had not called or visited the children since June 5, 2009, and that she had custody of the children pursuant to a valid court order. Following a hearing on February 22 and 23, 2010, the circuit court affirmed the juvenile court's order adjudicating the boys dependent and neglected and sustaining Ms. Washington's petition. The court found Mr. Stinson unfit to care for the children, awarded permanent custody to Ms. Washington, and awarded Mr. Stinson reasonable visitation. Mr. Stinson filed a notice of appeal to this Court.

### Issues Presented

Mr. Stinson presents the following issues for our review:

(1)     Whether Jelani Stinson, a parent, should have lost his superior parental rights to a non-parent, Margaret Washington, without Margaret Washington presenting evidence of substantial harm to the children by Jelani Stinson was reversible error.

(2)     Whether the admission of evidence regarding Jelani Stinson's finances, employment, and payment of child support after he had been declared indigent was reversible error.

(3)     Whether the admission of evidence regarding Jelani Stinson's visitation of the children was reversible error.

(4)     Whether Jelani Stinson, who was not served with process in Juvenile Court by Margaret Washington, can be cured by having been served with process by Margaret Washington in Circuit Court with a Circuit Court Summons and Amended Petition.

(5)     Whether the allowance of the attorney appointed to represent Tamara Richardson, a parent, who did not appeal the case from the Juvenile Court to the Circuit Court, to participate at the Circuit Court Trial was reversible error.

(6)     Whether the denial of the removal of the Guardian ad Litem was reversible error.

### Standard of Review

We review the trial court's findings of fact *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To preponderate against a trial court's finding of fact, the evidence must support another finding of fact with greater convincing evidence. *Mosley v. McCanless*, 207 S.W.3d 247, 251 (Tenn. Ct. App. 2006). We review the trial court's determinations on questions of law, and its application of law to the facts, *de novo*, however, with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Similarly, we review mixed questions of law and fact *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## *Discussion*

We first address Mr. Stinson's assertion that the trial court committed reversible error by granting Ms. Washington's petition where Ms. Washington failed to properly serve her petition in the juvenile court proceedings. Mr. Stinson points us to nothing in the record that he raised the issue of insufficient service in the juvenile court, however, and it is undisputed that, although he did not attend the juvenile court proceedings, he was represented by counsel in those proceedings. There is nothing in the record to indicate that the issue of insufficient service was raised before February 2010, when Mr. Stinson alleged insufficiency of process in the juvenile court proceedings as an eleventh alternative affirmative defense in his answer to Ms. Washington's amended petition. Additionally, this matter ultimately proceeded upon the amended petitions filed by Mr. Stinson and Ms. Washington in the circuit court. This issue is waived where Mr. Stinson failed to raise it in the juvenile court proceedings, where Mr. Stinson was represented at those proceedings, and where this matter proceeded de novo in the circuit court as a custody proceeding between a parent and a non-parent. *See, e.g., In re Johnny E.K.*, No. E2009-01634-COA-R3-PT, 2010 WL 550911, at *5 (Tenn. Ct. App. Feb. 16, 2010), *perm. app. denied* (Tenn. May 18, 2010).

We next turn to Mr. Stinson's assertion that the trial court erred by admitting evidence of his income, his failure to pay child support, and his failure to visit the children. Mr. Stinson's argument, as we understand it, is that the admission of evidence regarding his finances and failure to support the children was unnecessary in light of his admission of indigency, and that this matter should not have been considered by the circuit court.

We begin our discussion of this issue by noting that the issue appealed in the circuit court was not the juvenile court's finding of dependency and neglect, but the juvenile court's award of custody to Ms. Washington. As Mr. Stinson stated in his response to the guardian ad litem's motion for a child and family team conference, the proceeding in juvenile court was, in part, to adjudicate custody of the children. Mr. Stinson does not assert that the juvenile court or the circuit court erred in their determination that the children were dependent and neglected.

Appellate courts afford the trial courts wide discretion regarding the admissibility of evidence and will not overturn a trial court's determination absent an abuse of discretion. *E.g., Goodale v. Langenberg*, 243 S.W.3d 575, 587 (Tenn. Ct. App. 2007). Rule 401 of the Tennessee Rules of Evidence provides:

> "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

-4-

Rule 402 provides:

> All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible.

Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless preparation of cumulative evidence.

The Tennessee Rules of Evidence, read together, reflect an intent that all evidence meeting the test for relevancy under Rule 401 is admissible unless excluded on constitutional grounds, by statute or by the rules themselves, or if the danger of unfair prejudice, confusion, misleading the jury, or unnecessary delay outweighs the probative value of the evidence. *Goodale*, 243 S.W.3d at 587. We also have observed that the rules "strongly suggest[] that when the balance between the evidence's probative value and any prejudicial effect is close, the evidence should be admitted." *Id.* (citations omitted). Therefore, the exclusion of relevant evidence under rule 403 "is an extraordinary step that should be used sparingly." *Id.* (quoting *Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn. Ct. App. 2000)).

We cannot say the trial court abused its discretion in admitting evidence of Mr. Stinson's ability to support and nurture these children in light of the entirety of the record. We also cannot say that the trial court erred by denying his motion to remove the guardian ad litem and by allowing the legal counsel for the children's mother to participate. In his brief, Mr. Stinson asserts that "said presentation of evidence was an attempt to prejudice Mr. Stinson before the Circuit Court." Upon review of the entire record, and in light of Mr. Stinson's own testimony, we find no abuse of discretion by the trial court.

We finally turn to whether the trial court erred in awarding custody to Ms. Washington, a non-parent, under the superior parental rights doctrine. It is well-settled that parents have a fundamental right to the custody and care of their children. *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993); *Askew v. Donoho*, 993 S.W.2d 1, 4 (Tenn. 1999). Therefore, the standard applied by the courts to custody disputes between a parent and a non-parent differs from the standard applied to disputes between two parents. *In re Shelby R.*, No. W2009-01172-COA-R3-CV, 2010 WL 1980195, at *5 (Tenn. Ct. App. May 18, 2010) (*no perm. app. filed*). "'The comparative fitness analysis commonly associated with

custody disputes between biological parents cannot be used because it fails to take into account that the custody claims of biological parents and the custody claims of third parties do not have the same legal weight.'" *Id.* (quoting *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001)). Accordingly, in an initial custody proceeding between a parent and a non-parent, a natural parent has superior rights and cannot be deprived of the custody of their child absent a showing of substantial harm to the child. *Blair v. Badenhope*, 77 S.W.3d 137, 143 (Tenn. 2002). The burden is on the non-parent to demonstrate substantial harm to the child. *Id.* Only after the trial court has made a finding of substantial harm to the child may it engage in a best interest of the child analysis. *Id.* at 142.

We have noted that the courts have not fully defined the circumstances that would support a finding of a risk of substantial harm to the child. *Sharp v. Stevenson*, No. 2009-00096-COA-R3-CV, 2010 WL 786006, at *2 n.2, (Tenn. Ct. App. Mar. 10, 2010) (*no perm. app. filed*). The term "substantial," however, "connotes a real hazard or danger that is not minor, trivial, or insignificant." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). It also "indicates that the harm must be more than a theoretical possibility." *Id.* Although it "need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id.* Additionally, a finding of parental unfitness or of child dependency and neglect by the trial court, and the circumstances identified by the General Assembly in the statutes governing the termination of parental rights, relocation, and grandparent visitation, provide guidance to the courts when determining whether a child would face a risk of substantial harm if not removed from a parent's custody. *Id.* at n.6 & 7; *Sharp*, 2010 WL 786006, at *2 n.2.

In this case, the trial court made a specific finding in its final order that Mr. Stinson is unfit to care for the minor children. In its lengthy and detailed findings of fact and conclusions of law, the trial court found that Mr. Stinson was ordered to pay child support but "has not voluntarily paid child support for the two children. The only child support [Mr. Stinson] has paid was a $500.00 purge payment to get out of jail and money recovered by garnishments on his unemployment checks. The purge payment was made on November 25, 2008, and was the last child support payment he has made." The trial court further found that Mr. Stinson had not visited the children since June 5, 2009, "although he had a right to do so." The court found, "[p]rior to that there was very little contact or visitation with the children even though [Mr. Stinson] had the right to do so by court order." The trial court found that Mr. Stinson did not know where the children attended school and that he was not aware of their medical conditions "except that they suffer from eczema." It also found that Mr. Stinson was unemployed after being fired from employment at Popeye's Chicken for failure to meet standards.

At the oral argument of this matter, counsel for Mr. Stinson asserted that what Mr.

Stinson did or did not do is "irrelevant." Counsel stated that Mr. Stinson can work, but does not, and acknowledged that the failure to visit or support the children is "bad stuff." Mr. Stinson contends, however, that his fitness to parent the children is not relevant under the superior parental rights doctrine. We must disagree.

As noted above, under the superior parental rights doctrine, a parent's rights to the care and custody of their child is superior to that of all third parties. However, a finding of abandonment or parental unfitness will support the award of custody to a non-parent. *Blair v. Badenhope*, 77 S.W.3d 137, 143 (citing *In re Askew*, 993 S.W.2d 1, 5 (Tenn. 1999)). Upon review of the record, clear and convincing evidence, including Mr. Stinson's testimony, supports the trial court's finding that Mr. Stinson made no attempt to support the children, even when employed, and had rarely visited or attempted to contact them. At the hearing in February 2010, Mr. Stinson testified that he had not contacted the children since June 2009. As noted above, the termination statutes provide guidance as to what may support a finding that a parent is unfit. Under Tennessee Code Annotated § 36-1-113(g), Mr. Stinson's failure to visit or support the children for over four months would constitute grounds for termination of parental rights. We cannot say that the trial court erred in finding him unfit to assume custody of the children in this case.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Jelani Stinson, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE